IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH CHESS (#22273-424), ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 07 C 5333 |
| ) | |
| JOHN PINDELSKI, ) | Judge Wayne R. Andersen |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joseph Chess, a federal prisoner incarcerated at the Metropolitan Correctional Center ("MCC"), initiated this civil rights action in September 2007 against four MCC psychologists, a fellow inmate Jerome Adams, and the Bureau of Prisons (BOP). Initially, only the MCC Defendants were served. Plaintiff alleges that, on February 6, 2007, Adams poured scalding water on Plaintiff, causing him to suffer severe burns to his face, neck, eye, and ear. Allegedly, the MCC Defendants knew that Adams was mentally unstable and dangerous, yet allowed him to be housed in general population. In August 2008, the court denied the MCC Defendants' motion to dismiss for failing to exhaust, but later granted their motion for summary judgment on the exhaustion issue. (R. 46 and 47, Order and Opinion of 1/23/09.) The court dismissed Plaintiff's claims against the MCC Defendants but, noting that his complaint included an exhausted claim against the United States, allowed Plaintiff to proceed with a Federal Tort Claims Act ('FTCA") claim and ordered that the United States be served and respond to the complaint. (R. 46, Order of 1/23/09.)

Currently before the court is the United States' motion to dismiss. (R. 55.) The United States contends that the discretionary function exception applies to Plaintiff's claims, such that it is immune from suit. Plaintiff has filed responses. (R. 60 and 66). The United States has replied. (R. 64.) For the following reasons, the court denies the Government's motion to dismiss.

## STANDARD OF REVIEW

When considering a motion to dismiss, the court assumes to be true all well-pleaded allegations and views the alleged facts, as well as any inferences reasonably drawn therefrom, in a light most favorable to the plaintiff. *Erickson v. Pardus,* 551 S. Ct. 89, 93-94 (2007); *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case or determine the plaintiff's ability to succeed on his claims. *Weiler v. Household Finance Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996).

Under the notice pleading requirement of Fed. R. Civ. P. 8(a)(2), the complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Pleading extensive facts is not necessary. *Thompson v. Washington*, 362 F.3d 969, 971 (7th Cir. 2004). However, the allegations of a complaint must at least "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *E.E.O.C. v. Concentra Health Services, Inc.,* 496 F.3d 773, 776-77 (7th Cir. 2007). A court need not presume facts not alleged. *Id.* Furthermore, if a plaintiff pleads facts that demonstrate that he has no claim, a court may dismiss the complaint. *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

## ANALYSIS

**Discretionary Function Exception:**

The United States typically enjoys sovereign immunity from suits for damages. The Federal Tort Claims Act (FTCA), however, waives the Government's immunity "for civil actions ... for money damages ... for ... personal injury ... caused by the negligent or wrongful act or omission of any employee of the Government ... under circumstances where ... a private person ... would be liable" under applicable state tort law. 28 U.S.C. § 1346(b)(1); *Parrott v. U.S.*, 536 F.3d 629, 635 (7th Cir. 2008). In this case, the Government argues that, although the FTCA waives sovereign immunity to

allow tort claims against it, the discretionary function exception bars Plaintiff's claims. (R. 56 at 2-6.) The discretionary function exception applies to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C.A. § 2680. The exception serves to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Palay v. United States,* 349 F.3d 418, 427 (7th Cir. 2003) (quoting *United States v. Gaubert*, 499 U.S. 315, 323 (1991)).

Two factors must be present for the exception to apply: "(1) the action complained of must involve an element of judgment or choice; and (2) the action must relate to considerations of public policy." *Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir. 1995) (citing *Gaubert*, 499 U.S. at 322-23); *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988)).

With respect to the judgment or choice prong, so long as the action or inaction that is the subject of the FTCA claim involves an element of discretion, this prong is satisfied, even if the Government employee's decision was an abuse of discretion. *Palay v. U.S.*, 349 F.3d at 428; *Bailor*, 51 F.3d at 685. However, "[i]f 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' the discretionary function exception does not apply." *Calderon v. U.S.,* 123 F.3d 947, 949 (7th Cir. 1997) (quoting, *Gaubert*, 499 U.S. at 322). The failure to follow a specific rule, mandate, or order constitutes an absence of discretion, as opposed to an abuse of discretion. *See Gaubert*, 499 U.S. at 322-24. Thus, even when a more general decision may be discretionary, such as whether to keep two inmates separated, if "a valid separation order is in effect, there is no discretion left to operate on that narrow question." *Parrott v. U.S.*, 536 F.3d at 638.

With respect to the public policy prong, the decision that is the subject of the FTCA claim must involve a policy concern. The exception, however, is not limited to the decisions by those in

"policymaking or planning ranks of government," but also applies to the day-to-day decisions when carrying out such policies. *Palay*, 349 F.3d at 428. "It is the nature of the conduct, rather than status of the actor, that governs whether the discretionary function applies in a given case." *Palay*, 349 F.3d at 428. "When established government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* (quoting *Gaubert*, 499 U.S. at 324). Thus, the second prong of the discretionary function exception applies not only to the promulgation of Bureau of Prisons (BOP) rules and regulations enacted by policymakers, but also to the discretionary decisions of officers when carrying out such rules. *Id.*

Before a court engages in the two-part inquiry to determine if the discretionary function exception bars a suit based upon Government conduct, "[the court] must identify the conduct at issue." *Merando v. United States*, 517 F.3d 160, 165 (3rd Cir. 2008). In the instant case, the Government identifies the challenged conduct as "Adams' placement in general population." (R. 56, Defs.' Motion to Dismiss, 6.) The Government states that the placement of inmates within a facility is left to the discretion of BOP officials. In support of this contention, the Government cites 28 C.F.R. § 541.22(a) and *Gaubert*, 499 U.S. at 324. Neither § 541.22(a) nor the Government's citation to *Gaubert* assists with determining whether Adams' placement in general population was discretionary.

The citation to *Gaubert* refers to the Court's reasoning that "if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." (R. 56, Motion to Dismiss, p.6, quoting *Gaubert*, 499 U.S. at 324.) The quote from *Gaubert* addresses whether a decision satisfies the second prong of the discretionary function test – whether a decision involves policy considerations – and does not assist in determining whether the challenged conduct in this case was discretionary. Section 541.22(a) states

that a BOP warden or lieutenant "may" place an inmate in administrative detention under certain circumstances, including if the inmate is a new commitment awaiting classification or if the inmate's continued presence in general population poses a threat of safety to the inmate or others, or he is awaiting either a disciplinary hearing or investigation. This section applies more to the disciplining of inmates as opposed to the procedures with the placement of inmates in general population upon their entrance into a particular facility or unit.

The challenged conduct – the placement of inmate Adams in general population – appears to involve issues with respect to intake procedures. Plaintiff alleges that psychologists knew or should have known that Adams was a dangerous inmate, yet allowed him to be placed in general population. (R. 1, Complaint, ¶ 10.) In his response to the motion to dismiss, Plaintiff explains that Adams was transferred to unit 13, that he had a history of violent behavior, that he took anti-psychotic medication, but that he was placed in general population. (R. 60, Response to Motion to Dismiss, ¶ 4.)

Although the assignment of a housing unit or classification for an inmate may be discretionary, the Government cites no regulation, rule, or policy statement demonstrating that such an assignment is discretionary. Furthermore, BOP Program Statements provide certain mandatory procedures with the classification and housing of inmates. Program Statement 5290.15, Intake Screening, states:

> Immediately upon an inmate's arrival, staff shall interview the inmate to determine if there are non-medical reasons for housing the inmate away from the general population. Staff shall evaluate both the general physical appearance and emotional condition of the inmate.

In making the decision whether the inmate should be placed in general population, "[t]he interviewer shall also review SENTRY information and the Inmate Central File or Presentence Investigation Report (PSI)." P.S. 5290.15(1). Policy Statement 7331.04 for Pretrial Detainees, which Plaintiff cites, provides: "Within the first 48 hours of admission, an initial risk/needs assessment must be made." P.S. 7331.04(10).

> Unit staff must actively seek information which may reflect on the inmate's behavior or offense severity, thereby helping to determine the inmate's security, medical, psychological, and/or other special needs. Unit staff should document an initial impression and make a recommendation for housing to the unit manager.

P.S. 7331.04(10)(b); *see also Palay*, 349 F.3d at 431 n.7 (discussion of mandatory intake procedures).

The BOP Program Statements, which direct officials to interview inmates within 48 hours, evaluate their file and PSI reports, and seek information to determine the inmates' security and psychological needs, are mandatory in nature and do not appear to involve an element of discretion. While the ultimate determination where to place an inmate may be discretionary, the procedures that must be followed before making that decision are not. *See Palay*, 349 F.3d at 429 (although the assignment of inmates to a particular unit may be discretionary, the failure to follow more specific, mandatory rules with respect to making that decision is not covered under the discretionary function exception). The court cannot make a determination at this stage whether mandatory procedures with the placement of Adams in general population were followed. The concern expressed in *Palay* applies to this case. "[W]ith nothing more than [Plaintiff]'s complaint to go on, [this court has] no idea what the BOP's or MCC's policy in fact was, or whether the official(s) who moved [Adams] acted in accord with that policy." *Id.* A more fully developed record – one which includes not only an explanation of what the procedures were at the Chicago MCC with respect to the placement of inmates in general population, but also evidence establishing that the decision to place Adams in general population was discretionary after mandatory procedures were followed – may demonstrate that the discretionary function applies to this case. However, such a determination cannot be made on the current record.

Accordingly, the court denies the Government's motion to dismiss. The Government may reassert its discretionary function exception argument at a later stage of these proceedings. The Government shall answer the complaint or otherwise respond within 30 days of the date of this order.

**Failure to Properly Monitor:**

As noted by the Government, Plaintiff's response to the motion to dismiss indicates that he may be alleging that a BOP officer was negligent with the monitoring of inmates at the time of the scalding water incident. In his response to the motion to dismiss, Plaintiff states, "Evidence will also show that at the time of the attack on Chess, the correctional officer assigned to unit 13 was reading a newspaper and not properly monitoring the unit." (R. 60, Pl.'s Response to Motion to Dismiss, 4.)

The Government, in its reply, contends that Plaintiff neither alleged this claim in his complaint, nor presented the claim in his Form 95 to the Attorney General for exhaustion purposes. (R. 64, Def.'s Reply, 3-5.)

A plaintiff may not bring a FTCA claim unless he has first presented his claim to the appropriate federal agency and that agency has denied the claim. 28 U.S.C. § 2675(a); *see also Palay*, 349 F.3d at 425.

> [A] claim shall be deemed to have been presented when a Federal agency receives from a claimant ... an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for ... personal injury ... alleged to have occurred by reason of the incident ....

28 C.F.R. § 14.2(a).

In accordance with § 14.2(a), Plaintiff submitted a From 95 to the Attorney General and the BOP in Washington, D.C. (*See* Exhibit C attached to Complaint, R. 31-2.) The BOP denied the claim. (*Id.* at Exh. D.) The issue, however, is whether Plaintiff "presented" his negligent monitoring claim sufficiently enough to alert the BOP to the presence of this claim. Although Plaintiff was not obligated "to plead legal theories in the Form 95," *Palay*, 349 F.3d at 425; *Murrey v. United States*, 73 F.3d 1448, 1452 (7th Cir. 1996), he was required to assert pertinent facts. *Palay*, 349 F.3d at 425-26. Like a complaint, a Form 95 is entitled to liberal and generous construction. "All that is required is 'sufficient notice to enable the agency to investigate the claim." *Id.* at 426. "[I]f the claim would

have been apparent to a 'legally sophisticated reader' of the form, then we will charge the agency with notice of that claim and deem it to have been exhausted." *Id.* (citing *Murrey*, 73 F.3d at 1453).

In this case, Plaintiff's Form 95 stated:

> On February 6, 2007, I was attacked by a mentally ill inmate. The attack was unprovoked, without warning, the inmate got a big cup of scalding hot water and threw it on the right side of my face. I suffered burns to my cheek, ear, and neck. In addition my eye was burned."

(R. 31-2, Complaint, Exh. C.)

Plaintiff's Form 95 stated no additional facts to indicate whether he was claiming a failure to properly monitor by the officer on duty at the time of the incident or a failure to properly assess the appropriateness of placing Adams in general population. Rather, as noted above, Plaintiff simply stated that he was attacked by a mentally ill inmate. This allegation lends itself to a negligent-monitoring claim almost as much as it does to a negligent-placement claim. The BOP's response is equally vague about the investigation of the claim. "Investigation of your claim did not reveal you suffered any personal injury as a result of the negligent acts or omissions of Bureau of Prisons employees acting within the scope of their employment." (R. 31-2, Complaint, Exh. D.) Liberally construing the Form 95, Plaintiff's negligent-monitoring and negligent-placement claims appear to simply be "more specific iteration[s] of a failure-to-protect claim." *See Palay*, 349 F.3d at 426.

Accordingly, to the extent the Government request dismissal of Plaintiff's negligent-monitoring claim for failure to exhaust it, the court denies the request.

The complaint, however, does not allege a negligent-monitoring claim. Plaintiff's complaint asserts that Adams never should have been allowed in general population. Plaintiff states that MCC's chief psychologist, John Pindelski, and assistant psychologists Jason Dana, Richard Nieberding, and Daniel Greenstein knew that Adams was "emotionally and mentally disturbed and from time to time displayed fits of uncontrolled rage and anger . . . [and] was a threat to the health and safety of other inmates" (Complaint, ¶¶ 9-10.) "Despite this knowledge, the Defendants acting with a reckless

disregard . . . placed Adams in the general population." (*Id.* at ¶ 10.) Nowhere does the complaint state that the officer on duty at the time of the attack was negligent in not monitoring inmates.

Accordingly, the negligent-monitoring claim discussed by Plaintiff in his response to the motion to dismiss is not currently part of his complaint and is not before the court for consideration. To include this claim in this suit, Plaintiff would have to submit an amended complaint that sets forth all of the claims he seeks to raise in this case.

## CONCLUSION

For the reasons stated above, the court denies the Government's motion to dismiss. The Government may reassert its discretionary function exception argument at a later stage of the proceedings. The Government shall answer the complaint or otherwise respond within 30 days of the date of this order.

ENTER: *Wayne Andersen*
/Wayne R. Andersen
**United States District Court Judge**

**DATE: January 15, 2010**